METROPOLITAN LIFE INS. CO. *v.* LAVINIA CHAPPELL *et al.*[*]

*(Nashville.* December Term, 1924.)

1. **INSURANCE.** Parent of insured not entitled, to sue under ''facility of payment clause,'' where right given only to executor or administrator.

Under life insurance policy, providing for payment to executor or administrator, and containing a "facility of payment clause" authorizing payment to any one equitably entitled, parents of insured, not being her personal representatives, could not maintain action for payment, as payment under such clause is optional with insurer. (*Post, pp.* 305-309.)

Cases cited and approved: Burns v. Prudential Ins. Co., 253 S. W., 81; Griffith v. Prudential Ins. Co., 172 Ill. App., 304; Lewis v. Met. Life Ins. Co., 178 Mass., 52; Marzulli v. Met. Life Ins. Co., 79 N. J. Law, 271; Pettit v. Prudential Ins. Co., 231 Mass., 394; Providence County Sav. Bank v. Vadnais, 26 R. I., 122; Prudential Ins. Co. v. Ritchey, 188 Ind., 157; Tarasowski v. Prudential Ins. Co., 113 Misc. Rep., 248; Renfro v. Met. Life Ins. Co., 148 Mo. App., 258; Wallace v. Prudential Ins. Co., 174 Mo. App., 110.

Cases cited and distinguished: Williard v. Prudential Ins. Co. of Am., 276 Pa., 427; Manning v. Prudential Ins. Co., 202 Mo. App., 124.

2. **INSURANCE.** Provision that insurer not liable, unless insured in sound health at date of policy, held valid.

A provision in a life insurance policy that insurer assumed no obligation thereunder, unless insured was in sound health at date of policy, was valid and binding on insured. (*Post, p.* 309.)

---

[*]On effect of stipulation in application or policy of life insurance that it shall not become binding unless delivered to assured while in good health, see notes in 17 L. R. A. (N. S.), 1144, 43 L. R. A. (N. S,), 725, L. R. A. 1916F, 171.

On right to enforce payment under "facility of payment clause" see note in 28 A. L. R., 1350.

Cases cited and approved: Murphy v. Met. Life Ins. Co., 106 Minn., 112; Met. Life Ins. Co. v. Howle, 62 Ohio St., 204; Life & Casualty Ins. Co. v. King, 137 Tenn., 685; Packard v. Met. Life Ins. Co., 72 N. H., 1; Morrison v. Wis. Odd Fellows' Mut. Life Ins. Co, 59 Wis., 162; Brown v. Met. Life Ins. Co., 65 Mich., 306; Manhattan Life Ins. Co. v. Carder, 82 F., 986; Plumb v. Penn. Mutual Life Ins. Co., 108 Mich., 94.

3. INSURANCE. No material difference between ''good health'' and ''sound health'' as used in life insurance policies.

There is no material difference between "sound health" and "good health" as used in life insurance policies. (*Post, pp.* 309, 310.)

4. INSURANCE. ''Sound health'' means absence of disease of serious nature directly tending to shorten life.

The phrase "sound health" within life insurance policy, exempting insurer from liability if insured is not in sound health at date of policy, means absence of disease of serious nature, or that directly tends to shorten life as contradistinguished from temporary ailment or indisposition. (*Post, pp.* 309, 310.)

5. INSURANCE. ''Good health'' within life insurance policy defined.

One is in "good health" within a life insurance policy when he or she has no grave, important, or serious disease, and is free from any ailment that seriously affects general soundness or healthfulness of his or her system. (*Post, p.* 310.)

6. INSURANCE. Insured held not in ''sound health'' at date of policy, and insured's knowledge thereof immaterial.

Where undisputed proof showed that insured died of Bright's disease one month after issuance of policy denying liability unless insured was then in sound health, which disease was of long standing, deceased was not in "sound health" at date of policy, and insured's knowledge or lack of knowledge thereof was immaterial. (*Post, pp.* 310-311.)

Case cited and approved: Barker v. Met. Life Ins. Co., 188 Mass., 542.

*Headnotes 1. Life Insurance, 25 Cyc., p. 887; 2. Life Insurance, 25 Cyc., p. 811. 3. Life Insurance, 25 Cyc., p. 811; 4. Life Insurance, 25 Cyc., p. 811; 5. Life Insurance, 25 Cyc., p. 811; 6. Life Insurance, 25 Cyc., p. 811.

FROM DAVIDSON.

Appeal from the Circuit Court of Davidson County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—Hon. A. G. RUTHERFORD, Judge.

JOHN H. DE WITT and GARLAND MOORE, for plaintiffs.

WM. S. NOBLE, for defendant.

MR. JUSTICE HALL delivered the opinion of the Court.

This action originated before a justice of the peace of Davidson county, and was brought by Lavinia Chappell against the defendant, Metropolitan Life Insurance Company, to recover the sum of $246, alleged to be due the plaintiff upon an industrial policy of insurance issued by defendant upon the life of Birdie Lee Chappell (named in the policy as "Birdie L. Chappell"), on March 20, 1922; the insured having died on April 20, 1922.

The justice of the peace gave judgment for the plaintiff, and the defendant appealed to the circuit court of the county, and in that court the warrant was amended, by leave of the court, so as to make Frank Chappell (husband of Lavinia) a coplaintiff.

The case was tried to a jury and the jury found the matter in controversy in favor of the plaintiffs; that is, that the defendant was indebted to the plaintiffs in the sum of $246, with interest thereon, making in all the sum of $259.53.

A judgment having been entered in accordance with the verdict of the jury in favor of plaintiffs and against defendant for said sum, defendant prayed an appeal from said judgment to the court of civil appeals, after its motion for a new trial had been overruled, which was granted upon condition that defendant execute an appeal bond as required by law. This the defendant failed to do. It however, seasonably filed a bill of exceptions containing a record of the evidence introduced and the proceedings had on the trial, and, on March 11, 1924 (less than three months after the rendition of said judgment), filed the record in the court of civil appeals for writ of error. That court reversed the judgment of the trial court and dismissed plaintiff's suit. The case is now before this court upon the plaintiffs' petition for writ of *certiorari,* and for review.

· The plaintiffs are the father and mother of the insured, who was twenty-three years of age, unmarried, and without issue at the time of her death.

By the terms of the policy, the defendant agreed that, in consideration of the payment by the insured of the weekly premium of fifteen cents, and upon receipt of proof of the death made in the manner, to the extent and upon the blanks required by the policy, and upon the surrender of the policy and evidence of the premium payment thereunder, it would pay the sum of $246 to the executor or administrator of the insured, "unless payment be made under the provisions of the next succeeding paragraph," which next succeeding paragraph is in words as follows:

"The company may make any payment or grant any nonforfeiture privilege provided herein to the insured,

husband or wife, or any relative by blood or connection by marriage of the insured, or to any other person appearing to said company to be equitably entitled to the same, by reason of having incurred expense on behalf of the insured, or for his or her burial; and the production of a receipt signed by either of said persons, or of other proof of such payment or grant of such privilege to either of them, shall be conclusive evidence that all claims under this policy have been satisfied.''

The policy also contains certain ''conditions'' as a part of the contract, and one of these ''conditions'' is as follows:

''No obligation is assumed by the company prior to the date hereof, nor unless on said date the insured is alive and in sound health. Should the proposed insured not be alive or not in sound health on the date hereof, any amount paid to the company as premiums hereon shall be returned.''

At the beginning of the trial in the circuit court the defendant, through its counsel, gave notice that, among other defenses, it would rely upon the above-quoted provision of the policy, and defendant tendered to plaintiffs the premiums paid by the insured, viz., ninety cents, but the tender was refused.

Upon the policy being introduced in evidence by the plaintiffs, defendant moved the court to dismiss the suit because the plaintiffs were not the administrators or executors of the insured, and therefore could not maintain a suit on the policy, which motion the court overruled.

Another defense, of which defendant's counsel gave notice at the beginning of the trial, was that fraudulent

misrepresentations were made by the insured as to the true condition of her health at the time of making application for the policy, in that she concealed the fact that she had been treated by a physician for a serious disease within two years prior to the date of the application for the policy.

At the close of all. the evidence the defendant moved the court to peremptorily instruct the jury to return a verdict in its favor upon the following grounds:

"First, because the plaintiffs are not the personal representatives of the deceased Birdie Chappell, not being either the executor or executrix or administrator or administratrix of the deceased, and they not having any right to prosecute the suit.

"Second, that there are no facts to warrant a verdict in favor of the plaintiff."

The motion for a directed verdict was overruled, and the case was submitted to the jury, with the result before stated.

All the questions we have indicated were preserved by defendant's motion for a new trial, and were seasonably and fully presented by its assignments of error filed in the court of civil appeals.

As before stated, that court reversed the judgment of the trial court and dismissed plaintiffs' suit, holding that defendant's motion for a directed verdict should have been sustained by the trial court because of the lack of a right of action in the plaintiffs,. and also because the undisputed evidence showed that the insured was not "in sound health" at the date of the policy.

Through their assignments of error filed in this court, plaintiffs urge that the court of civil appeals committed

error in sustaining defendant's motion for a directed verdict and dismissing plaintiff's suit on the grounds hereinbefore stated.

We are of the opinion that the judgment of the court of civil appeals is correct upon both grounds. The contract of the defendant is to pay the amount of the policy "to the executor or administrator of the insured, unless payment be made under the provisions of the next succeeding paragraph." The next succeeding paragraph has been hereinbefore set out, and constitutes what is known in the nomenclature of life insurance contracts as the "facility of payment clause." This court has not heretofore been called upon to determine the effect of such a clause with respect to the right of any other than the personal representative of the insured to maintain a suit on a policy of life insurance. But numerous cases involving a similar clause have been before the courts of last resort in other states.

In the recent case (1923) of *Williard* v. *Prudential Insurance Co. of America,* 276 Pa., 427, 120 A., 461, 28 A. L. R., 1348, it is said that—"It is generally held that facility of payment clauses in industrial life insurance policies, providing in substance that the insurer may pay the benefit to the beneficiary named, or to any other person appearing to it equitably entitled thereto, are for the benefit of the insurer, to be exercised or not at its option, and that it gives a third party, to whom the insurer might have elected to pay the benefit, no right to compel the insurer to make the payment to him."

In *Manning* v. *Prudential Insurance Co.* (1919), 202 Mo. App., 124, 213 S. W., 897, a sister of the insured who had suggested that her brother take out the policy sued

151 Tenn.—20.

on, and who had paid all but the first premium and also a part of his funeral expenses, was held to have no right of action under the policy, which was payable to the executor or administrator of the insured, and contained a "facility of payment" " clause like that in the preceding case. The court said:

"Though reluctant so to do, we are of the opinion that we must hold that the policy in suit vests in plaintiff no right of action against the defendant; that only the executor or administrator of the insured can maintain the action. By the terms of the contract defendant agrees to pay the executors or administrators; and it seems quite clear that the 'facility of payment' clause, . . . operates merely to give the insurance company the option to pay the amount of the insurance to any one coming within the class of persons there described, and that it does not, of itself, give to any such person a right of action on the policy. So it has been frequently ruled in other jurisdictions in passing upon policies of this character."

To the same effect is the holding of the court in *Burns* v. *Prudential Insurance Co.* (1923 Mo. App.), 253 S. W., 81, where the policy was also payable to the insured's executor or administrator and contained the same facility of payment clause, it was held that one who had advanced money to the insured and paid the premiums on the policy had no right, by virtue of such clause, to maintain an action against the insurer for the benefit.

To the same effect is the holding of the court in *Griffith* v. *Prudential Insurance Co.* (1912), 172 Ill. App., 304; *Lewis* v. *Metropolitan Life Insurance Co.* (1901), 178 Mass., 52, 59 N. E., 439, 86 Am. St. Rep., 463;

*Marzulli* v. *Metropolitan Life Insurance Co.* (1910), 79 N. J. Law, 271, 75 A., 473; *Pettit* v. *Prudential Insurance Co.* (1918), 231 Mass., 394, 121 N. E., 28; *Providence County Sav. Bank* v. *Vadnais* (1904), 26 R. I., 122, 58 A., 454; *Prudential Insurance Co.* v. *Ritchey* (1918), 188 Ind., 157, 119 N. E., 369, 484; *Tarasowski* v. *Prudential Insurance Co.*, (1920), 113 Misc. Rep., 248, 184 N. Y. S., 264.

It has been held that a relative of the insured is entitled to the benefit under a policy payable to the insured's estate or personal representative, which provides that the insurer may pay the benefit to the beneficiary named or any relative by blood, where an agreement was made between the insurer's agent, the insured, and the relative claiming the benefit, that the latter should receive the amount of the policy at the insured's death. These cases, however, rest in part upon the ground of estoppel. *Renfro* v. *Metropolitan Life Insurance Co.* (1910), 148 Mo. App., 258, 129 S. W., 444; *Wallace* v. *Prudential Insurance Co.* (1913), 174 Mo. App., 110, 157 S. W., 1028.

In view of the fact that the judgment must be reversed and the plaintiffs' suit dismissed for the error already indicated, we need only briefly to state our conclusions with respect to the other ground upon which the court of civil appeals was of opinion that defendant's motion for a directed verdict should have been sustained by the trial court.

The policy is dated March 20, 1922. Fifteen days later (April 4th) the insured was taken to Vanderbilt Hospital, where she remained until her death on April 20, 1922, just one month after the issuance of the policy.

Dr. W. H. Blake, Jr., was her attending physician while at the hospital. Dr. Blake diagnosed her disease as chronic nephritis, or inflammation of the kidneys, commonly known as Bright's disease.

On the day folloying the insured's death an autopsy was performed by Dr. Carnathan, at the Vanderbilt Hospital, on her body (with the consent of her parents), to ascertain the cause of her death. As the result of this autopsy Dr. Carnathan reported that the cause of death was "chronic nephritis, resulting in nitrogenous retention and acidosis."

Dr. B. T. Terry, professor of pathology in the medical department of Vanderbilt University, examined the kidneys of the insured, and checked the results of Dr. Carnathan's autopsy, and Dr. Terry testified on the trial that the kidneys of the insured showed unmistakable chronic nephritis of long standing.

The testimony of Dr. Terry, and other physicians testifying on the trial, with respect to the nature and characteristics of chronic nephritis, or Bright's disease, and the time required for a case to reach the stage to which the insured had progressed, clearly excludes the idea that the insured was "in sound health" when the policy was issued thirty days before her death.

Dr. T. H. Elliott, who is also professor of chemistry in McHarry Medical College, at Nashville, Tenn., testified that he treated the insured for interstitial or acute nephritis in the spring of 1921. He says that, when he first saw her, her ankles were swollen, and there was a slight filling under the eyelids. He also testified that he made a chemical analysis of her urine and found that it contained albumen.

The proof shows that these are some of the chief symptoms of nephritis. The undisputed proof showed that the insured died of nephritis, and, according to the undisputed testimony of the physicians, the disease was of long standing.

Dr. Terry testified that the condition of the insured's kidneys showed that she had been suffering from the disease from six to eight months, and probably longer.

We are of the opinion that the provision in the policy that the defendant assumed no obligation thereunder, unless the insured was ''in sound health'' at the date of the policy, was valid, and was binding on the insured. A similar provision in a life insurance policy was held valid in the cases of *Murphy* v. *Metropolitan Life Insurance Co.*, 106 Minn., 112, 118 N. W., 355; *Metropolitan Life Insurance Co.* v. *Howle,* 62 Ohio St., 204, 56 N. E., 908; *Life & Casualty Insurance Co.* v. *King,* 137 Tenn., 685, 195 S. W., 585, and the authorities there cited.

The meaning of the term ''sound health,'' when used in an insurance policy or application for insurance, has been frequently defined by the courts. *Packard* v. *Metropolitan Life Insurance Co.*, 72 N. H., 1, 54 A., 287; *Morrison* v. *Wisconsin Odd Fellows' Mutual Life Insurance Co.*, 59 Wis., 162, 18 N. W., 13; *Brown* v. *Metropolitan Life Insurance Co.*, 65 Mich., 306, 32 N. W., 610, 8 Am. St. Rep., 894; *Manhattan Life Insurance Co.* v. *Carder,* 82 F., 986; *Metropolitan Life Insurance Co.* v. *Howle,* supra; *Plumb* v. *Penn. Mutual Life Insurance Co.*, 108 Mich., 94, 65 N. W., 611.

As used in life insurance policies, there is no material difference between ''sound health'' and ''good health.'' This court treated them as practically synonymous in

*Life, & Casualty Insurance Co.* v. *King,* supra. The phrase "sound health," when used in the sense used in the policy under consideration, is not to be taken literally. It does not mean perfect health, or imply absolute freedom from bodily infirmity or tendency to disease, but means generally the absence of any vice or disease in the constitution of a serious nature, or that has a direct tendency to shorten life, as contradistinguished from a temporary ailment or indisposition. *Packard* v. *Metropolitan Life Insurance Co.,* supra.

That one is in "good health," within the contemplation of such provision of a life insurance policy, means that he or she has no grave, important, or serious disease, and is free from any ailment that seriously affects the general soundness or healthfulness of his or her system. *Life & Casualty Insurance Co.* v. *King,* supra.

We are of the opinion that the undisputed proof shows that the insured was not "in sound health" at the date of the policy. The application of the condition in the policy that the defendant assumed no obligation, unless the insured was in sound health at the date of the policy, is not controlled by the insured's knowledge or lack of knowledge that she was not in sound health. The existence of life and sound health in the insured, at the date of the policy, was a condition precedent to the promise of insurance. *Barker* v. *Metropolitan Life Insurance Co.,* 188 Mass., 542, 74 N. E., 945; *Packard* v. *Metropolitan Life Insurance Co.,* supra.

As was said in the case of *Murphy* v. *Metropolitan Life Insurance Co.,* supra, it is clear from the language of the policy that defendant's promise of insurance was not absolute, but conditional, and that the existence of

life and sound health in the insured on the date of the policy is the condition on which the promise is made. It is the fact of sound health of the insured which determines the liability of the defendant in this character of policies, not apparent health, or his or any one's opinion or belief that he was in sound health.

It results that we find no error in the judgment of the court of civil appeals, and the writ of *certiorari* is denied.