## NATIONAL LIFE & ACCIDENT INS. CO., Plaintiff in Error, v. PEARL ALEXANDER, Defendant in Error.

Western Section.  May 8, 1931.

Petition for Certiorari denied by Supreme Court, December 5, 1931.

Ewing, King & King, of Memphis, for plaintiff in error.
A. B. Knipmeyer, of Memphis, for defendant in error.

SENTER, J.  The parties will be referred to as in the court below, Pearl Alexander, plaintiff, and National Life & Accident Insurance Company, defendant.

This is a suit to recover on a policy of insurance issued upon the life of Elliott Alexander, the husband of plaintiff. The policy was

issued on August 25, 1924, and premiums paid thereon weekly until December, 1928. The policy lapsed because of the non-payment of the weekly premiums for more than four consecutive weeks. On January 29, 1929, the insured made application for a revival of the insurance policy by paying the premiums in arrears. The application for a revival recited: "I certify that I am now in good health and that I am suffering from no disease, either acute or chronic, nor from the result of any accident of injury." The policy was revived pursuant to the application on February 18, 1929, and a revival endorsement on the policy contained the following clause:

"This revival endorsement is void unless the insured under the original policy is alive and in sound health at the date hereof, and no liability whatever is assumed for death or disability due to causes originating prior to this date."

It appears that on April 18, 1929, the deceased was taken to the Memphis General Hospital for treatment and died on April 24. It is the contention of appellant that the deceased was not in sound health at the time the policy was revived. At the trial of the case the defendant insurance company introduced in evidence what purported to be the hospital record, and from which it appeared from the history of the case that at the time deceased was admitted to the hospital he was suffering from chronic myocarditis with myocardial failure, and the alleged history of the case as disclosed by the record made by an interne at the hospital recited that the pain of the patient started about three months prior to the time he was admitted to the hospital and grew continually worse. This record was proved by the young lady who was in charge of the hospital records, it being shown that the interne who made the record was not available as a witness. No objection was made to the introduction of this record. Plaintiff, who was the wife of the insured, testified that the deceased had been in good health up to a few days before he went to the hospital, and that he was in sound health at the time the insurance policy was revived. There was other evidence in the record that strongly corroborated plaintiff, as to the state of health of the deceased. The deceased had been regularly employed at the Adler Hotel for two or more years, and according to the evidence of the manager of the hotel deceased appeared to be in good health during the entire time he worked there, which was up to a few days before his death.

The trial of the case resulted in a judgment in favor of plaintiff and against the defendant for the sum of $212. At the conclusion of all the evidence, the defendant moved for a directed verdict in its favor. This motion was overruled, and after the verdict the defendant filed its motion for a new trial. This motion was likewise overruled, and judgment rendered on the verdict. From this action of the court, the defendant has appealed in the nature of a writ of error to this court, and has assigned errors.

The first assignment is that there is no evidence to sustain the verdict of the jury. The second is that the verdict of the jury is contrary to the law and the evidence. The third assignment is that the verdict of the jury is against the great weight and preponderance of the evidence. The fourth assignment is as follows:
"The court erred in charging the jury as follows:
"'Sound health does mean a passing or temporary disability but one to be in unsound health must be suffering from some disease or ailment that is serious enough to be reasonably calculated to be dangerous, and to produce death.'"

The second and third assignments, to the effect that the verdict of the jury is contrary to the evidence and that the evidence preponderates against the verdict, cannot be sustained or considered, since it is not the province of an appellate court to review the evidence to determine its preponderance, and a verdict of a jury concurred in by the trial judge cannot be disturbed on appeal if there is any evidence to support the verdict.

The first assignment must be overruled because there is a conflict in the evidence on the question of the state of health of the insured at the time the insurance policy was revived. The first three assignments of error are accordingly overruled. These assignments seem to have been abandoned by appellant, and are not discussed in the brief of the appellant. The brief of the appellant is confined to the fourth assignment, which complains of the portion of the charge above quoted, and directed to the definition given by the court as to what constitutes sound health.

The court charged the jury on the question of the burden of proof and the determinative issues as follows:
"In other words, she must show by the greater weight of the evidence, that the insured, her husband, was in sound health on February 18, 1929. That is the pivotal question of fact in this case, was he in sound health on that date?"

The court further charged:
"In this case the plaintiff says the insured was in sound health on February 18, 1929. The defendant says he was not, but that at that time he was suffering from heart trouble and that heart trouble afterwards produced his death. . . . So this one question that I have outlined and gone over two or three times, is the pivotal and dominating question of fact for you to determine in this law suit. . . ."

Following this above quoted language the court charged the jury as follows:
"Now, what is meant by sound health, gentlemen of the jury?
"Sound health does not mean a passing or temporary disability, but one to be in unsound health must be suffering from

some disease or ailment that is serious enough to be reasonably calculated to be dangerous, and to produce death.'

The court then stated to the jury the contention of the respective parties on the subject of the state of health or condition of the insured on February 18, 1929. It is the above portion of the charge, and the definition given by the court of the term ''sound health'' as referred to in the application for revivor and the certificate, that is made the basis of the fourth assignment of error. Appellant contends that the definition as given in the charge is erroneous and does not conform to the definition as given this language by the appellate courts and text writers.

Probably the most comprehensive definition of the term ''good health'' when used in a policy of life insurance is stated in Life & Casualty Co. v. King, 137 Tenn. 698, 699, wherein it is said:

''. . . The term 'good health,' when used in a policy of life insurance, means that the applicant has no grave, important, or serious disease, and is free from any ailment that seriously affects the general soundness or healthfullness of his system. A mere temporary indisposition, which does not tend to weaken or undermine the constitution, at the time of taking membership, does not render the policy void. (Note to Roe v. National Life Ins. Ass'n, 17 L. R. A. (N. S.), 1145; citing Barnes v. Fidelity Mutual Life Ass'n, 191 Pa., 618, 43 Atl., 341, 45 L. R. A., 264, and other cases.)

''The same definition is found in note on page 173, L. R. A. (N. S.), 1916 F, citing Horne v. John Hancock Mutual Life Ins. Co. (1913), 53 Pa. Sup. Ct., 330. To the same effect see 14 R. C. L., 900, 1068, 1071. Our own cases are substantially in accord. Rand v. Life Assur. Society, 17 Tenn., 291, 37 S. W., 7; Ins. Co. v. Lauderdale, 94 Tenn., 635, 30 S. W., 732; Knights of Pythias v. Cogbill, 99 Tenn., 28. . . .''

In the case of Metropolitan Life Ins. Co. v. Chappell, 151 Tenn., 310, the above definition of the term ''good health'' is quoted approvingly.

This court, in the case of Metropolitan Life Ins. Co. v. McGowan, 2 Tenn. App. Rep., 347, followed the definition of ''good health'' or ''sound health'' as given in Insurance Company v. King, supra, and in Metropolitan Life Ins. Co. v. Chappell, supra, and wherein it was held that there is no material difference between the words ''sound health'' and ''good health'' as used in life insurance policies.

In the present case it was the theory of defendant at the trial of the case that the insured died of a disease of the heart alleged to have been contracted by the insured prior to February 18, 1929, the date of the revival of the policy. The defendant introduced the hospital record for the purpose of showing the duration of the disease

from which the insured died on April 24, 1929. The learned trial judge charged the jury that the burden of proof was upon the plaintiff to show by a preponderance of the evidence that the insured was in sound health on February 18, 1929, and then stated that that question of fact was the pivotal question in the law suit to be determined by the jury. The learned trial judge did not follow the words in his definition of "sound health" as used in insurance policies in the exact language of the definition as stated in Life & Accident Ins. Co. v. King, supra, and in Metropolitan Life Ins. Co. v. Chappell, supra, but did state that sound health as used in insurance policies did not mean "a passing or temporary disability, but one to be in unsound health must be suffering from some disease or ailment that is serious enough to be reasonably calculated to be dangerous." He then added the words, "and to produce death." With the exception of the last words used by him, it practically conformed to the definition as generally given by the courts of this state and of other states. The trial judge having in mind the theory of the defendant, that is, that at the time the policy of insurance was revived that the insured was then suffering from a serious heart disease which resulted in his death within two or three months. The court intended to, and did convey to the jury the idea that, if the insured was suffering from a disease sufficiently serious in character as would reasonably result in the death of the insured, plaintiff could not recover.

We are of the opinion that when the charge is considered in its entirety, and the theory of the defendant is also considered in connection with the charge of the court, that the definition as given by the court of the words "sound health" did not constitute prejudicial error. This was not simply a definition of the words "sound health," but was also a statement intended to be a proper reference to the theory of the defendant. It follows that the assignments of error are overruled, and the judgment is affirmed. Appellant and surety on the appeal bond will pay the cost of this appeal.

Heiskell and Owen, JJ., concur.