## Western & Southern Life Ins. Co. v. Edelen.

(Decided June 23, 1936.)

WILLIAM MARSHALL BULLITT, CHAS. J. WHITE and BRUCE & BULLITT for appellant.

JOHN A. POLIN and ANDREW NICHOLS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On November 23, 1931, the appellant and defendant below, Western & Southern Life Insurance Company, in consideration of a weekly premium of 20 cents, issued its policy on the life of Rushia Ward, agreeing to pay her personal representative upon her death the sum of $352, with the option to make payment, as provided, under the "Facility of Payment" clause usually contained in such policies and which is found in the one

sued on. On January 24, 1932, the insured died and George L. Edelen, one of the undertakers who buried her, qualified as her administrator and filed this action in the Washington circuit court against defendant to recover on the policy, it having denied liability thereunder. Such contention of nonliability was based upon two facts which it averred in its answer: (1) False, fraudulent, and material answers made by the insured in the signed application to procure the policy; and (2) that the ''sound health'' clause contained in its face prescribed that ''no obligation is assumed by the company unless on the date and delivery hereof the insured is alive and in sound health,'' and that the deceased insured in this case was not in sound health on the date of the delivery of the policy, and had not been for some considerable time prior thereto.

A reply denied those defenses, and in another paragraph it was averred that plaintiff's agent who procured the policy wrote the answers to the questions in the application himself, and that defendant was thereby estopped to rely on their alleged falsity. Such affirmative matter in the reply was controverted, which made the issues, and upon trial there was a verdict for plaintiff for the entire amount sued for, upon which judgment was rendered. Defendant's motion for a new trial was overruled and it has filed the transcript of the record in this court with motion for an appeal. A number of reasons are contained in the motion for a new trial and argued in brief filed in this court by defendant's counsel for a reversal of the judgment, among which are (a) error of the court in overruling defendant's motion for a peremptory instruction made at the close of plaintiff's testimony and at the close of all the testimony, but in each instance overruled, and (b) incompetent evidence introduced by plaintiff over defendant's objections, and which two reasons will be disposed of in the order named.

The proof conclusively shows that the insured was afflicted with tuberculosis for at least some eighteen months or more before her death. She was a patient at Waverly Hills Sanitarium from January 9, 1930, to May 7, 1930. She was then taken out of it on that occasion by her husband over the protest of the medical force in charge. The head physician, and another one

under him who had immediate charge of the insured during her stay in that institution, each testified that a clinical examination was made of the patient upon her entry into the sanitarium, including X-ray pictures, and they emphatically state that the disease was considerably advanced upon her first visit thereto, and that they so informed her husband. She was returned to the same institution on April 28, 1931, and remained there two months, less one day, being again taken away by her husband over the protest of her physician on June 27, of that year, at which time, the disease, according to both of the medical witnesses, was in an advanced and active stage, and there was no evidence introduced of a probative nature contradicting that testimony. In fact no witness, professional or otherwise, pretended to deny the testimony of those two physicians, i. e., the existence of the pulmonary trouble with which the insured was afflicted during the dates when she was a patient in the tuberculosis institution referred to, nor is there any denial that the disease with which she was then suffering in its advanced stage was ever alleviated, much less cured.

The mother of the insured testified that the latter was either residing in her home or temporarily visiting her at the time the policy was issued, and that a person whom she designated as "the agent" solicited the policy and filled in the answers to the questions propounded in the application, which was signed by the insured after that task had been performed by the "agent." She claims that none of the questions therein were propounded to the insured, although she admits that there was considerable talk preceding and during the preparation. But nowhere did she pretend to state that the insured made any mention of her confinements in the hospital or of her affliction which necessitated them. No divulgence of any such matters was made. The witness did not pretend to know the individual whom she designated as "agent"; and the only justifiable inference is that she so concluded because he said that he was such.

The plaintiff, as we have stated, was at that time an undertaker in partnership with another witness who testified for plaintiff. They were each qualified embalmists, but neither of them pretended to possess any

of the qualifications of physician. Neither of them ever saw the insured until after she was dead and they were permitted to state, in substance, that from the appearance of the corpse it was their opinion that she had not died from the effects of tuberculosis. They base that conclusion on the plumpness of the dead body and from the absence of what they term was the usual paleness of the corpse of one who died from the effects of tuberculosis, which they stated was absent in this case. Such testimony, however, was given only by plaintiff's partner, Mr. Bell, who was the active undertaker in this case, plaintiff not having seen the body at all, but testified in the manner indicated only as an expert. It is quite clear that the testimony of the two undertakers, as so outlined, was improperly admitted, and there are serious doubts as to the admissibility of some of the testimony of the mother in relating what occurred at the time the policy was issued, but which, because of the conclusions we have reached, will not be further discussed.

Taking up now reason (b), the application shows that the insured, in answer to direct questions therein, stated that she had not had any previous sickness; that she had not been treated by a physician; that she had never had any lung disease, or serious illness, and that she had not been treated in any hospital or institution, and that she was at the time in sound health. It is seriously argued by counsel for plaintiff (based, of course, on the testimony of the mother as above outlined), that, since the agent filed in the application without propounding any of the questions to the insured, the company waived or is estopped to rely on such representations, and generally that is true where the agent is not in collusion with the applicant, but there is no defense of the latter character made in this case. However, for the creation of an effective estoppel it must appear by some testimony having a tendency to convince that the alleged agent was in fact a representative of the insurance company. As we have indicated, it is doubtful if the testimony is sufficient to establish that fact. But, waiving that question and accepting the argument of plaintiff's counsel as true with reference to the answers in the application, there yet remains the question of unsoundness of health of the insured at the time the policy

was delivered, and which has been uniformly held and declared to be a defense to an action on the policy, unless it was waived in some proper enforceable manner. No such waiver was attempted to be established in this case, and, therefore, that defense should be upheld, unless defendant is precluded from doing so because of some other fact. The general rule is that the unsoundness of health at the time of the delivery of the policy in order to avoid liability under it must have originated after the application and before the delivery of the policy. But that rule does not apply where the application is not accompanied with a medical examination or inspection by a physician.

Thus, in the case of Metropolitan Life Insurance Co. v. Crawford's Adm'x, 244 Ky. 730, 51 S. W. (2d) 926, in dealing with similar questions, we said: "In an instruction on the sound health clause of the policy, the court told the jury that the unsoundness of health must have arisen after the application. This is the rule where the application is accompanied by a medical examination or medical inspection by a physician; but the rule does not apply where, as here, the only inspection of the applicant was made by the company's local agent, who was not a physician. Prudential Insurance Company v. Hodge's Adm'x, 232 Ky. 44, 22 S. W. (2d) 435; Western & Southern Life Ins. Co. v. Carroll's Adm'r, 243 Ky. 48, 47 S. W. (2d) 940. It follows that the instruction was not proper." Compare also Prudential Insurance Company of America v. Broughton, 253 Ky. 83, 68 S. W. (2d) 782. A number of opinions to the same effect rendered by this court could be cited approving and applying the same interpretation, but there are none to the contrary, and such determinations are thoroughly settled as a part of the established law.

Finally, it is insisted that the insured did not die of tuberculosis, but of an affliction of the heart which a local physician in the country who waited upon her for some days prior to her death described as myocarditis. He testified that he treated the insured during her "last illness" and when asked: "Q. Did you at that time find any symptoms of tuberculosis? A. Well, I thought her symptoms pointed to this condition I spoke of, myocarditis," and that, according to the best of his judgment, it was the cause of her death. He was

again asked: "Q. Did she or not, at that time, in your judgment, have tuberculosis?" and answered: "I could not say about that, I made no accurate test, I only used the stethoscope, for the examination." Continuing, he testified that he made no test of the sputum of his patient, nor employed any X-ray, but only a stethoscope, and then stated that the diagnosis or examination that he made did not develop tuberculosis in every case. He then stated that when he did examine the patient she was in a serious condition. Clearly, that testimony has no probative force on the issue as to the condition of the health of the patient at the time the policy was delivered to her. On the contrary, it is clearly and indisputably shown, and contradicted by no one, that the insured was then afflicted with tuberculosis, and that she and her husband, and no doubt other members of her family and acquaintances, as well, were aware of that fact.

The case is one that enlists the sympathy of the court, but it has been often declared by the courts that insurance contracts should be enforced as any other contract with reference to all legal provisions contained in them. The condition of the health of a contemplated insured is a most material and vital one, not only to the company issuing the policy, but to all others of its policy holders, and howsoever much the situation may be deplored, it is nevertheless the duty of courts to enforce the agreements of the parties contained in the policy when not forbidden by law. Without further elaboration we conclude that the court erred in not sustaining defendant's motion for a peremptory instruction, and should the testimony upon another trial, if any, be substantially the same as upon the last one, the court will sustain that motion. All other questions not herein determined are reserved.

Wherefore, the motion for the appeal is sustained, and the appeal is granted, and the judgment is reversed, for proceedings consistent with this opinion.