[Civ. No. 5861. First Appellate District, Division One—August 27, 1927.]

PACIFIC EMPLOYERS INSURANCE COMPANY, Petitioner, v. ARENBRUST, FARAHAN and LORAN et al., Respondents.

264

W. R. Millington for Petitioner.

G. C. Faulkner and Gordon S. Keith for Respondents.

KNIGHT, J.—An award was made by the Industrial Accident Commission in favor of respondent Emily Jane Moffett and against petitioner Pacific Employers Insurance Company on account of the accidental death of Mrs. Moffett's son, the award being based upon a finding that on September 2, 1926, at Stockton, California, "while in the employ of the defendant Dennis Loran, named herein as one of the firm of Arenbrust, Farahan and Loran, at which time the employer was insured against liability," the deceased sustained injuries arising out of and in the course of said employment which proximately caused his immediate death. Said insurance company now seeks by this proceeding in *certiorari* to have the award annulled, the main contention being that the contract of insurance under which its liability attaches was vitiated by false representations made by the assureds as to the existence of said firm as a copartnership.

The policy was issued by the company at its San Francisco office, upon a written application prepared by or under the direction of Alan B. Hicks, the company's licensed agent at Stockton, and forwarded by him to the San Francisco office, the assureds taking no part in the preparation except to give the information upon which the answers contained therein were based. When completed said application set forth the following questions and answers: "Name of this Employer......Armbrust Farnham and Loran P. O. Address......712 East Jackson Street — Stockton — California Individual, Co-partnership, Corporation or Estate?...... A Co-partnership."

With reference to the business relationship of the individuals named, as it existed at the time of the insurance was applied for, Loran, who was the sole witness on the subject, testified that Arenbrust, Farahan, and himself had been separately engaged in the trucking business in and around Stockton, each owning and operating his own truck and hiring and paying his own men; that at a hearing of the Railroad Commission in Stockton "it was deemed advisable for men who had a single truck to form sort of a combination for the reason [that] when one truck was in operation we had to find some means of taking care of something that

might turn up otherwise''; that thereafter their trucks were operated under such an agreement, whereby jobs were taken care of jointly, providing one truck could not handle the work alone, and that when so operated each owner was paid for the amount of work his truck had done, each owner taking care of his own expenses, and there being no division of income or expenses; that common headquarters were maintained at Farahan's home, 712 East Jackson Sreet, Stockton.

Loran further testified that the foregoing working arrangement was explained when the policy was applied for, and in this respect his testimony was fully supported by that of Hicks, who testified in part as follows: ''A. The business was secured in the first place by my father out of the office. I am the licensed agent here for the company but the business was secured through the office. Q. Did you talk with any of these men about the situation? A. No. The three men, Arenbrust, Farahan and Loran, came into the office and applied for compensation insurance as Arenbrust, Farahan and Loran working together. My understanding was that they were working together and that when Farahan had too much work he would call in Loran, and the same would apply to Arenbrust, when their business was greater than they could take care of individually. Q. That is practically the same as Mr. Loran testified to here this morning? A. I couldn't hear very much from back there. That was the working arrangement and we drew up a policy that way, the three men. The intention of the policy was—I understood how they were working and when I sent the application that way I figured to give them protection jointly and singly. Q. Did this policy describe them as partners? A. Described them I believe as a copartnership, 'co' meaning with or together, which I thought would answer the purpose. Q. You say you were a licensed agent here or at that time for the company? A. Am still. Q. Do I understand from that you are company's agent or called a broker licensed to handle their business? A. I am a licensed agent of the company. Not a broker, no.''

When an insured in good faith makes truthful answers to the questions contained in the application, but his answers, owing to the fraud, mistake, or negligence of the agent filling out the application, are incorrectly transcribed, the company is estopped to assert their falsity as a defense

to the policy. The acts of the agent, whether he is a general agent with power to issue policies, a soliciting agent, or merely a medical examiner for the company, are in this respect the acts of the company, and he cannot be regarded as the agent of the insured, even though it is so stipulated in the application. (*Layton* v. *New York Life Ins. Co.,* 55 Cal. App. 202 [202 Pac. 958]; *Lyon* v. *United Moderns,* 148 Cal. 470 [83 Pac. 804]; *Westphall* v. *Metropolitan Life Ins. Co.,* 27 Cal. App. 734 [151 Pac. 159]; *Schmitt* v. *United States Fidelity & Guaranty Co.,* 169 Minn. 106 [210 N. W. 846].)

The authorities further hold that an insurance policy is a contract of indemnity for loss; and where the language used is ambiguous and may be understood in more senses than one, the main object is, as in the case of construction of contracts generally, to determine in what sense the words employed were intended; and that in the determination of such question the contract shall be construed liberally in favor of the insured, and any uncertainty or ambiguity therein be interpreted most strongly against the insurance carrier, because of the fact that the carrier draws the contract (*Meyerstein* v. *Great American Ins. Co.,* 82 Cal. App. 131 [255 Pac. 220]; *Victoria S. S. Co.* v. *Western Assur. Co.,* 167 Cal. 348 [139 Pac. 807]); that under certain circumstances some flexibility of meaning must be given the standard forms of insurance, and the rigid language used therein interpreted in the light-of the common understanding of the parties in order to do justice between them (*Taylor* v. *Northwestern Nat. Ins. Co.,* 34 Cal. App. 471 [167 Pac. 899]).

It clearly appears from the evidence above narrated that the assureds in obtaining the insurance made no misrepresentations of any kind as to their business relationship, but, on the contrary, fully, fairly, truthfully, and in good faith explained to petitioner's agent the arrangement under which they were conducting their affairs; and there is no evidence indicating a subsequent departure from the plan thus explained. The evidence also shows that the statement in the application as to the existence of a copartnership did not emanate from them, but represented the agent's legal conclusion drawn from facts correctly related to him, and was by him inserted in the application; furthermore, that the

very object in applying for said policy was to cover the class of employment in question, and that the use of the term "co-partnership" by the agent in describing said business relationship was intended by him and understood by the assureds as giving to the latter insurance coverage "jointly and singly." Even assuming, therefore, that the legal appellation given by the agent to said business relationship was a misnomer, it cannot be said to be due to any fraud practiced by the assureds, but at most amounted to a mistaken legal conclusion on the part of the agent, and, consequently, under the authorities hereinabove cited, the insurance carrier is estopped to assert falsity as a defense to the policy.

The fact that the information relating to the working arrangement was obtained by an employee in Hicks' office rather than by Hicks personally does not affect the situation, for the reason that the transaction of the issuance of the policy was consummated through the Hicks agency, and Hicks was cognizant of all the facts before he forwarded the application to the company's office in San Francisco. Nor does it matter that at the time of applying for insurance protection the assureds were aware that the cost of the policy as issued would be less than if policies were issued to them separately, for, as shown, there was no fraud or deceit practiced, and apparently the item of expense in obtaining insurance coverage was only incidental to the main object of their business association, which was to obtain more employment for their individual trucks.

The award is affirmed.

Tyler, P. J., and Cashin, J., concurred.