**Metropolitan Life Insurance Company v. Crawford's Administratrix.**

(Decided June 24, 1932.)

WILLIAM MARSHALL BULLITT, BRUCE & BULLITT, and EUGENE B. COCHRAN, for appellant.

W. C. MARSHALL and L. FRANK JOHNSON, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

On April 1, 1929, the Metropolitan Life Insurance Company issued to Oscar Crawford a policy insuring his life in the sum of $228. While fox hunting on the hills near Frankfort, on April 13, 1929, Crawford fell and died from mitral lesion of the heart. Thereafter his wife qualified as administratrix and brought suit to recover on the policy. The trial resulted in a verdict and judgment in her favor for the full amount of the policy, and the company has prayed an appeal.

The company defended on the ground of false, material, and fraudulent representations in the application to the effect that the insured had not had any disease of the heart, and had not within three years prior to the application of March 18, 1929, been under the care of any physician. There was the further defense that the policy provided that the company might declare the policy void if the assured was not in sound health on its date, or if, within two years before the date thereof, he had been attended by a physician for any serious disease or complaint, and that the assured was not in sound health on the date of the policy, and had been attended by a physician for mitral lesion of the heart within two years before the date of the policy. In an instruction on the sound health clause of the policy, the court told the jury that the unsoundness of health must have arisen after the application. This is the rule where the application is accompanied by a medical examination or medical inspection by a physician; but the rule does not apply where, as here, the only inspection of the applicant was made by the company's local agent, who was not a physician. Prudential Insurance Co. v. Hodge's Admx. 232 Ky. 44, 22 S. W. (2d) 435; Western & Southern Life Ins. Co. v. Carroll's Admr. 242 Ky. 48, 47 S. W. (2d) 940. It follows that the instruction was not proper.

With that feature of the case eliminated, it remains to determine whether the evidence that Crawford was not in unsound health on the date the policy was issued and delivered was sufficient to make a question for the jury. In some instances we have held that lay witnesses may testify to facts showing that the diagnosis of a physician was not correct. Thus in Penick v. Metropolitan Life Ins. Co., 220 Ky. 626, 295 S. W. 900, a physician testified that he had treated the insured for high blood pressure. Another physician testified that a man could not do heavy work who had a blood pressure of 210. We held that evidence that the insured was a strong man and worked regularly in a glass factory tended to show that the physicians' diagnosis was incorrect, and was therefore sufficient to make the question one for the jury. We have also held that, where a disease manifests itself by outward symptoms, those who were associated with the insured could testify to the absence of such symptoms, and thus make an issue for the jury. Prudential Insurance Co. v. Hodge's Admx., supra. But the situation here presented is different. Some time prior to the application the insured was examined by Dr. Barr and Dr. Patterson, and they both testified that he was suffering from a mitral lesion of the heart. Dr. Coblin examined the insured with a stethoscope about a week before he died, and found that he was suffering from a mitral lesion of the heart. On the other hand, we have the following evidence: Marion Chaffin had known Crawford for seven or eight years, and had not known him to be sick very much of the time. He came from the mountains in June, 1928, and fox hunted with Crawford two or three nights a week from then on up until March. Crawford always wanted to keep walking and always walked him down. On the day of his death Crawford seemed to be in good health and was anxious to go hunting. He kept his dogs tied, but Crawford turned his dogs loose. Crawford was in as good health at that time as he had ever seen him. Crawford "hollered" at his dogs as loud as he had ever heard a man "holler" fox hunting.

He looked around and did not see Crawford. Crawford fell out of the road when he fell. When he reached Crawford, Crawford was fighting for breath. Crawford died in a short time. Crawford had not been working for several months. Sometimes Crawford was a little bit short of breath in walking up the hill. Mrs. Mabel C. Gaines knew Crawford and saw him up and sitting

on his porch the day he died. She also saw him going about. "He was a fairly stout looking man," and was "fairly strong and vigorous," so far as she knew. She never had occasion to notice whether Crawford was short of breath. Robert Armstrong testified that Crawford always looked to him like a healthy man, and he had never heard him complain of being sick. He had fox hunted with Crawford many times and Crawford was always willing and ready to go. He never noticed anything wrong with Crawford in any way. Crawford never complained about being sick, and he never thought that Crawford was in delicate health. He supposed that any one climbing around on the hills would be short of breath, and he may have noticed that in Crawford. All that this evidence shows is that Crawford was apparently a strong man, and took considerable exercise in hunting foxes, and as he fell and died from the effect of such exercise on his heart, there is absolutely no basis for the assumption that either his appearance or his ability to take exercise indicated that he was not suffering from heart disease. We are therefore constrained to hold that the evidence referred to did not tend to contradict the evidence of the physicians that Crawford was suffering from a mitral lesion of the heart. That being true, he was in unsound health on the date of the policy, and appellant's motion for a peremptory instruction should have been sustained.

This conclusion makes it unnecessary to consider the other grounds urged for reversal.

Wherefore, the appeal is granted, and the judgment is reversed and cause remanded for a new trial consistent with this opinion.