## Western & Southern Life Ins. Co. v. Downs.

Nov. 27, 1945.

Wm. Marshall Bullitt, William Mellor, and Bullitt & Middleton for appellant.

Steinfeld & Steinfeld for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER— Reversing.

On March 20, 1944, appellant, the Western and Southern Life Insurance Company, delivered a policy of industrial insurance to appellee's decedent, Alex H. Downs, whereby it agreed to pay to the beneficiary the sum of $500, upon receipt of satisfactory proof of the death of the insured. The insured died on August 1, 1944. Upon refusal of appellant to pay the benefit, appellee instituted this action to recover under the provisions of the policy.

The deceased signed an application for the insurance on the 14th day of March, 1944. The application, when signed, contained the following questions and answers:

"What illness, disease or injuries has Life Proposed had in the past 3 years? None

Has Life Proposed now or ever had (If so, attach letter of full particulars.)

\* \* \* \* \*

A serious injury?   No

A serious illness?   No

Medical or other treatment in a hospital or institution?   No

Any physical defect?   No

Is Life Proposed now in sound health?   Yes.''

The policy contained the following provision: ''Subject to the provision headed Incontestability, no obligation is assumed by the Company unless on the date and delivery of this policy the Insured is alive and in sound health.''

The defense was based upon two grounds: (1) The insured obtained the policy by fraudulent and material misrepresentations in answering the questions above quoted; and (2) the insured was not in sound health on the date and delivery of the policy.   On the trial, the Court properly ruled the burden of proof to be upon appellant.   At the conclusion of appellant's testimony, the Court sustained appellee's motion to direct the jury to return a verdict for her in the amount sued for.

The only evidence in respect to the fraudulent and material misrepresentation is that given by the company's agent, who described himself as a trustee of the company, a position higher in authority than that of General Agent.   He testified that he knew the insured, a few weeks previous to the application for insurance, had received treatment and undergone examination in a hospital for an injury to his back.   That, without asking the insured any specific question, except ''if there was any good reason why he could not get the insurance,'' he (the agent) answered all questions on the application; that the insured signed the application; the policy was written upon the strength of the fact that the insured had been examined by another doctor for another insurance company, and a policy issued in pursuance of that examination.   There was no evidence that the insured read the answers filled in by the trustee when he signed the application.   From this testimony, it is obvious the insured made no misrepresentation to the agent.   In the case of Sovereign Camp, W. O. W., v. Alcock, 273 Ky. 734, 117 S. W. 2d 938, the agent himself inserted false statements in the written application and induced the insured, by misleading statements, to make false answers

to the questions in the application. It was held that the company could not rely upon false representations under those circumstances. In National Life Co. v. Rigney et al., 297 Ky. 743, 180 S. W. 2d 847, the agent, cognizant of the true condition, inserted false answers to the questions in the application. It was held that the company could not rely upon misrepresentation, because the knowledge of the agent was imputed to the company. The facts in this case militate more strongly against the insurer than in either of the cases above cited. It is obvious that appellant is estopped to rely upon the false answers inserted by its own agent with full knowledge of their falsity.

The defense based upon the sound health clause of the policy presents a closer question. The policy involved in this case is one for industrial insurance, and the insured was not required to undergo a medical examination in applying for the policy. The rule is that, where the applicant is required to pass a medical examination before the policy is issued, the insurer may not avoid liability under the policy unless the unsoundness of the insured's health originated after the examination and before delivery of the policy. But where, as here, a medical examination is not required or made, proof that the insured was not in sound health at the time of the delivery of the policy is sufficient to avoid the insurer's liability thereunder, irrespective of the time of the origin of the condition rendering the insured's health unsound. Prudential Ins. Co. of America v. Hodge's Adm'x, 232 Ky. 44, 22 S. W. 2d 435; Western & Southern Life Ins. Co. v. Carroll's Adm'r, 243 Ky. 48, 47 S. W. 2d 940; Western & Southern Life Ins. Co. v. Edelen, 265 Ky. 142, 95 S. W. 2d 1062. In support of its contention that the insured was not in sound health on the date and delivery of the policy, appellant introduced the doctor who had treated the insured in December of 1943, and the first four days in January of 1944, for the back injury. This doctor testified that, at that time, the insured also was suffering from pernicious anemia. The only clinical finding to which he testified in support of this diagnosis was the patient's blood count made in December, 1943, and which showed a deficiency of red corpuscles of approximately fifty per cent. He further testified that pernicious anemia (in contradistinction to secondary anemia) is incurable; that he saw the patient the day before

he died and he looked like he had pernicious anemia at that time, although his death was attributed to a kidney infection. This doctor further testified that the kidney infection likely was rendered more fatal by the presence of pernicious anemia. As to whether a mere deficiency of the red corpuscles in the blood is a sufficient clinical finding to support the diagnosis of pernicious or primary anemia, in contradistinction to secondary anemia, was not developed in this record, probably because appellee was not required to introduce proof on the question. In the absence of expert testimony on this point, we are of the opinion that the uncontradicted testimony of the doctor was sufficient to make out a prima facie case on the question of the unsoundness of insured's health upon the date and delivery of the policy; and for that reason, the motion for a directed verdict in favor of appellee should have been overruled. It was not shown that the agent of the company had knowledge of the fact, if it is a fact, that the insured was suffering with pernicious anemia at the time of the delivery of the policy. That being true, appellant cannot be deemed to have waived the sound health provision of the policy. As said in Germania Life Ins. Co. v. Lauer, 123 Ky. 727, 97 S. W. 363, 364: "The waiver of a stipulation in a contract such as this (sound health clause), to be effectual, must not only be made intentionally, but with full knowledge of all the existing conditions, and will not be binding upon the insurer unless the agent whose acts or conduct are relied on to establish the waiver was at the time in full possession of the material facts concerning the condition of the insured."

The judgment is reversed, for proceedings consistent with this opinion.