## Smith *v.* State Mutual Benefit Society, Appellant.

Argued October 1, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Ralph S. Croskey,* with him *Daniel B. Strickler* and *John Milton Ranck,* for appellant.

*Charles W. Eaby,* for appellee.

OPINION BY ARNOLD, J., November 12, 1947:

Defendant issued a beneficial certificate dated May 28, 1945, upon the life of Beatrice S. Jordan, who died August 6, 1945, while undergoing a surgical operation. Plaintiff brings this suit as the named beneficiary. The certificate contained the following condition: "EFFEC-TIVE DATE. This Policy shall take effect on the Date of Issue stated in the Schedule on the fourth page hereof, *provided the Insured is then alive and in good health.*" (Emphasis supplied.) The defense was that the insured was not in good health on the date of delivery of the policy, viz., May 28, 1945, and the defendant's pleading alleged: ". . . she was suffering from, among other things, heart trouble. That the primary cause of her death was Cardiac Collapse, the secondary cause being Neoplasm of the left Ovary. Fibromata Uteri. *That on May 28, 1945, said Beatrice S. Jordan was suffering from all of said ailments.*" (Emphasis supplied.)

Neoplasm, medically speaking, is a tumor, malignant or not; and fibromata uteri is a non-malignant tumor or tumors of the uterus.

Defendant put on the stand the insured's surgeon, who testified in chief that the operation disclosed that she had "a number of pathological conditions of the abdomen. There was one large cyst [a subdivision of tumors] which is a certain type of tumor which on examination proved to be malignant . . ., a fibroid uterus, pelvic inflammatory disease, on the left side, with sub-acute appendix." He further testified that she had complained of the disturbance in her left side for six or seven months prior to her death; that the primary cause of her death was cardiac collapse, and the secondary cause was the tumerous condition and the pelvic inflammatory disease; that he treated her fifteen to twenty-five times from January, 1945, until her death the following August. The defendant also offered in evidence the death certificate which showed the primary and secondary cause of death as stated in this opinion. There was no

contradiction or dispute as to any of these matters. At the close of the testimony the court directed a verdict for the plaintiff, on the theory that there was a variance between the pleadings and the proof, in that the defendant set up heart disease as the ill health of the insured on May 28, 1945. But the defendant also set up the tumerous conditions, and evidence thereof was given.

The good health clause is a condition and goes to the heart of the insurance contract: *Youngblood v. The Prudential Insurance Company,* 109 Pa. Superior Ct. 20, 165 A. 666. The clause is a condition precedent upon which the contract rests: *Prudential Insurance Company of America v. Kudoba et al.,* 323 Pa. 30, 186 A. 793. If there was no contract, there could be no recovery. The first question to be determined was whether the insured was in good health on May 28, 1945, within the compass of the pleadings. That was a jury question under the evidence and affidavit of defense, which averred, in addition to the heart condition, that she was suffering from "Neoplasm of the left Ovary" and "Fibromata Uteri" on May 28, 1945, the date of the delivery of the policy.

The judgment of the court below is reversed with a venire.