Hillsborough,
No. 4523.

LOUISE D. PERKINS

*v.*

JOHN HANCOCK MUTUAL LIFE INSURANCE CO.

Argued November 7, 1956.

Decided December 31, 1956.

384

*Eaton & Eaton* and *Clifford J. Ross* (*Mr. Ross* orally), for the plaintiff.

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Booth* orally), for the defendant.

KENISON, C. J. The insurer's first defense is that the application for the policy contained misrepresentations concerning the medical history of the insured. The evidence disclosed that the insured

had been treated by physicians and therefore the negative answer to question 17 of the application was incorrect. While RSA 408:7 provides that the soliciting agent shall "be regarded as the agent of the company and not the agent of the assured," as construed, it has proved to be inadequate and ineffective to accomplish its apparent objective. *Boucouvalas* v. *John Hancock Mutual Life Ins. Co.*, 90 N. H. 175, and *Levesque* v. *Metropolitan Life Ins. Co.*, 88 N. H. 41. In the former case it was held that the insurer was not chargeable with the knowledge of the soliciting agent who fraudulently wrote false answers in an application which an illiterate applicant subsequently signed. In the latter case the insurer was not chargeable with the negligent failure of the soliciting agent to ask the questions contained in the application. In other words under this statute either fraud or negligence of the soliciting agent avoids liability under the policy and is a defense of the insurer.

The statute has not been amended since these decisions, and this court has not reconsidered them. It may be questioned whether this statute in its present form permits the issuance of a policy to bind the insurer to the extent that a reasonable person in the position of the insured would understand that it did but improvement in this respect should be initiated by the Insurance Department or by the Legislature and not by the judiciary. *Consoli* v. *Insurance Co.*, 97 N. H. 224, 226.

In the present case, however, it does not appear that the application was endorsed upon or attached to the policy and made a part thereof as required by RSA 408:9. See *Amoskeag Trust Co.* v. *Prudential Life Insurance Company of America*, 88 N. H. 154, 158; *Gleason* v. *Insurance Co.*, 73 N. H. 583. The statute expresses the public policy of the state that insurance applications should see the light of day and that the policyholder should have an opportunity to read them. Anno. 93 A. L. R. 374. The failure of the insurer to attach to the policy a copy of the application prevents its reliance on misstatements in the application. *Lampke* v. *Metropolitan Life Ins. Co.*, 279 N. Y. 157; 1 Couch, Cyc. Insurance, s. 138. Accordingly the misstatements in the application itself cannot be relied upon by the defendant as a defense. This brings us to the crucial question of whether the insured complied with the provisions of the policy that she be in sound health when the policy was issued.

New Hampshire is among the jurisdictions which adhere to the

actual good health doctrine. 1 Appleman, Insurance Law and Practice, ss. 151, 154. This doctrine has been summarized in Wick, The Good Health Clause — What it Says and What Some Courts Say it Says, vol. 23, Insurance Counsel Journal, pp. 311, 313 (1956) as follows: "The rationale of the actual good health doctrine is that the parties, being free to contract as they pleased, have in unmistakable terms made the fact of good health a condition precedent to insurance coverage and that it is not within the province of the court, whatever its sympathies, to remake the insurance contract, either by defeating the good health clause or by reading into it language which is not there. In *Packard* v. *Metropolitan Life Ins. Co.*, (1903), 72 N. H. 1 . . . a particularly unfortunate case in which the insured, a ten-year old boy, died of heart disease, a malady from which, it developed, he had been suffering even prior to the issuance of the policy, unknown to anyone but his doctor, the New Hampshire court held for the insurance company . . . . "

Some recent decisions have considered the actual good health doctrine harsh and have adopted the view that good health should be given a subjective test — good health as far as the applicant is aware. *Bronx Sav. Bank* v. *Weigandt,* 1 N. Y. (2d) 545; *Brubaker* v. *Beneficial Standard Life Ins. Co.*, 130 Cal. App. (2d) 340; 8 Vand. L. Rev. 919; 30 Notre Dame Law. 697; 1955 Annual Survey of American Law 403. It is argued that the ordinary applicant for insurance is not a medical prophet and should not be expected to insure the exact reality of his physical condition when the disease or ailment may be latent or unknown. See *Moulor* v. *American Life Ins. Co.*, 111 U. S. 335; Prosser, Innocent Misrepresentation of Health in Insurance Applications, 28 Minn. L. Rev. 141.

It may be argued that the *Packard* case carries strict construction against the policyholder to a logical extreme, but it is noted that that case has been followed in *Karp* v. *Metropolitan Life Ins. Co.*, 86 N. H. 124, where an applicant who was ignorant of his heart disease was held to have violated the sound or actual good health condition precedent and so voided the policy. See note, Cost and Coverage of Industrial Life Insurance, 61 Yale L. J. 46 (1952). The parties to this litigation are entitled to have the insurance contract determined under those authorities.

In this case although the parents and relatives of the insured testified to her good health at the time the policy was issued, the uncontradicted medical evidence was that she died from bronchopneumonia caused by bronchiectasis which existed at the time of

the issuance of the policy and for years previously. This was not the actual sound health required as a condition precedent to the validity of the policy. Under the law existing in this state it is not the insured's apparent good health or his opinion or belief as to his health that controls but rather the fact of good health on the date the policy was issued. The insured's good faith or lack of knowledge of his true physical condition is immaterial. Vance, Insurance (3rd *ed.*) 643. The defendant is under no liability because the insured did not comply with the policy provision that she be in good health at the time it was issued.

*Judgment for the defendant.*

All concurred.