[Civ. No. 6592.   Fourth Dist.   Jan. 14, 1963.]

AMERICAN NATIONAL INSURANCE COMPANY, Plaintiff and Appellant, v. ANTONIO HERRERA et al., Defendants and Respondents.

794

Docker & Docker and James H. Perkins for Plaintiff and Appellant.

Hugh Wesley Goodwin for Defendants and Respondents.

COUGHLIN, J.—The decisive issue on this appeal relates to the effect of a provision in an industrial family insurance policy that it shall take effect only if the insured, his spouse, and his dependent children, all of whom are covered thereby, are in sound health at the date of issuance.

Two such policies of insurance were issued by the American National Insurance Company, the plaintiff, cross-defendant and appellant herein, to Antonio Herrera, one of the defendants, cross-complainants, and respondents herein, and to his wife, Feliz Herrera, following receipt of written applications therefor, which also contained a sound-health provision similar to that noted above; each policy provided for payment of designated amounts upon proof of death of the insured

or the insured's spouse, and each contained the foregoing sound-health provision. Five months after issuance Feliz died. Mr. Herrera filed a claim under both policies. The insurance company refused to pay the same, claiming that Mrs. Herrera was not in sound health at the time of issuance, and also that she and Mr. Herrera had given false answers to certain health questions in their respective applications. In the meantime Mr. Herrera had assigned part of the prospective proceeds from these policies to other persons. Thereafter, the insurance company brought this action against Herrera and his assignees to effect a rescission of the policies, and the latter, by cross-complaint, sought recovery thereunder. As an incident to its request for rescission, the plaintiff deposited the premiums paid, together with interest thereon, with the clerk of the court, for payment to the defendants. After trial before a jury, and the receipt of an advisory verdict in favor of the defendants, the court found that Mrs. Herrera was not in sound health on the date the policies were issued, and that the answers to the health questions contained in the subject applications were false, but that none of the parties had knowledge of either of the foregoing facts; denied rescission; and awarded judgment against the plaintiff on the cross-complaint.

The insurance applications, which are dated August 19, 1959, were prepared by agents of the insurance company after consultation with Mr. and Mrs. Herrera. The latter were Spanish speaking people who were not able to speak, read or write English. One of the agents spoke Spanish fluently and acted as an interpreter on the occasion in question. The findings of the trial court are predicated on an acceptance of the testimony of Mr. Herrera as to what occurred at this time, and on a rejection of the testimony of the agents relating a contrary version thereof. ▮▮ Under the general rule, we must accept that testimony which supports the judgment, insofar as it constitutes substantial evidence, and the facts hereinafter set forth are stated in adherence to this rule. (*Thomas* v. *Hunt Mfg. Corp.*, 42 Cal.2d 734, 736 [269 P.2d 12].)

Each application contained similar questions respecting the health of each insured, which the agent purportedly translated for and read to the Herreras. Among these were the following:

(1) "Do any of the persons to be included have physical or mental defects?"

(2) "Have you or any dependent to be included ever had any of the ailments listed?"
including among others, rheumatism, arthritis, cancer, high or low blood pressure, and heart disease. The answer to each of these questions, as written by the agent on the applications, was "No." Mr. Herrera testified that he and his wife were asked whether either of them "had" or "suffered from" heart disease or cancer, to which he replied that he did not know, and that his wife made the same reply. The applications also contained the following: "List below all causes for which you or any dependent to be included have consulted a doctor in the last five years" and the answer thereto, as written by the agent, was "None." Mr. Herrera stated that he was asked to tell all causes for which he or any dependent to be included in the policies had consulted a doctor in the last five years; he replied that his wife had gone to a hospital because of a cold; and his wife said the same thing. They did not say that she had consulted a doctor.

No medical examination of either applicant was required, the policies being issued in sole reliance on the information contained in the written applications.

The evidence shows without conflict that Mrs. Herrera went to the Fresno County Hospital on August 15, 1957, which was two years before the applications in question were signed, and gave a history of heart fluttering whenever she would lie on her left side, which commenced 11 years before and continued without change; of irregular and fast heart beats whenever she would lie on her left side; of blackouts when lying on her left side; and of taking medication for the past seven years. A week later she returned to the same hospital and reported that she still had the same trouble from lying on her left side and also gave a history of frequent sore throats and frequent joint pains when she was young. On August 10, 1959, which was nine days before signing the subject applications, Mrs. Herrera again went to the Fresno County Hospital; complained of increasing palpitation in her chest for the past two months; also complained of a sharp pain under her right breast which radiated around to her side; and indicated that the pain was relieved by lying down. Two weeks later, which was the day the subject policies were issued, Mrs. Herrera, who then was 36 years of age, again went to the hospital, told the doctor that she had rheumatic fever at age 21, which lasted for three months; said she felt

reasonably well after that, but had "heart trouble" during pregnancy the next year; stated that at age 23 she began to have shortness of breath which had increased since her first visit to the hospital in 1957; and also related having occasional chest pains. The foregoing facts are established by the hospital records; the information given and recorded therein could have been obtained only from Mrs. Herrera; and the correctness of their contents are not denied.

The court found that Mrs. Herrera "had in fact suffered from rheumatic heart disease and that she had had heart fluttering and other symptoms of such heart disease, and that on or about August 10, 1959 she had been aware of physical difficulties resulting therefrom and had received treatment at various times therefor, and that she had seen and had been examined by a licensed medical doctor at the General Hospital of Fresno County"; and also found that she "was not in fact in sound health at the time of the execution of the applications for said policies, or at the time of the issuance of said policies, and that she was at said time suffering from rheumatic heart disease with atrial fibrillation, mitral stenosis and regurgitation, angina pectoris and acute dilation of the heart due to endocarditis of mitral and tricuspid valves." These findings are supported by the diagnoses appearing in the hospital records, which were made at the time of Mrs. Herrera's visits to that institution, and by other medical evidence. Any other findings would have been contrary to the evidence. However, the court also found that neither Mr. nor Mrs. Herrera knew that she had the diseases in question, and concluded that because of such lack of knowledge the insurance company was liable under its policies even though Mrs. Herrera was not in sound health at the time of their issuance, and even though the answers to the questions in the subject applications, which heretofore have been considered, did not truthfully or completely relate the facts sought to be obtained thereby. The trial judge filed a written memorandum opinion in which he set forth his conclusions and indicated that in reaching the same he relied upon the rationale in the case of *Brubaker* v. *Beneficial etc. Life Ins. Co.*, 130 Cal.App.2d 340, 346 [278 P.2d 966], and the decisions in *Bankers Indem. Ins. Co.* v. *Industrial Acc. Com.*, 4 Cal.2d 89, 92 [47 P.2d 719], *Wills* v. *Policy Holders Life Ins. Assn.*, 12 Cal.App.2d 659, 665 [55 P.2d 920], *Irving* v. *Sunset Mut. Life Ins. Co.*, 4 Cal.App.2d 455, 459 [41 P.2d 194], *Weiss* v.

*Policy Holders Life Ins. Assn.*, 132 Cal.App. 532 [23 P.2d 38], *Pacific Employers Ins. Co.* v. *Arenbrust, Farahan & Loran,* 85 Cal.App. 263, 266 [259 P. 121], and other similar cases. The court also found that issuance of the subject policies with knowledge that Mrs. Herrera had gone to the hospital because of a cold, constituted a waiver of any claim of reliance upon the sound-health provisions therein, or upon the alleged misrepresentations made by Mr. and Mrs. Herrera.

The insurance company has appealed from the judgment entered, contending that the sound-health provisions in question and the findings of the court in the premises relieved it of any liability under the subject policies; that the evidence establishes as a matter of law that the answers given to the health questions contained in the applications for insurance were knowingly false; that no waiver occurred; and that the court erred in refusing to permit it to introduce a certified copy of the coroner's investigation which contained a statement allegedly made by Mr. Herrera who, in response to the question: "Has Mrs. Herrera been ill or seen a doctor recently?" purportedly replied: "Yes, for a long time she has been sick with a Rheumatic heart and Dr. Tahan has been treating her, but he has not seen her for about three months."

A provision in a life insurance policy that it shall not be effective unless at the time of issuance the insured is in sound health is in the nature of a condition precedent to liability; has been held to be valid; in those instances where a life policy containing such a provision is issued without a medical examination to an applicant who is not then in sound health, no liability attaches thereto unless the company issuing the same has waived the requirements of, or is estopped to assert its rights under that provision; and the provision applies even though the applicant has no knowledge that he is not in sound health. This statement of the rule is in accord with the overwhelming weight of authority in the premises. (*Greenbaum* v. *Columbian Nat. Life Ins. Co. of Boston,* 62 F.2d 56; *National Life & Accident Ins. Co.* v. *Collins,* 244 Ala. 182 [12 So.2d 353, 354]; *Independent Life & Accident Ins. Co. of Florida* v. *Roddam* (Fla.) 81 So.2d 221, 222; *Gulf Life Ins. Co.* v. *Green* (Fla.) 80 So.2d 321; *National Reserve Life Ins. Co.* v. *Jeffries,* 147 Kan. 16 [75 P.2d 302]; *Van Ross* v. *Metropolitan Life Ins. Co.,* 134 Kan. 479 [7 P.2d 41, 43, 81 A.L.R. 821]; *Rathbun* v. *New York Life Ins. Co.,* 30 Idaho 34 [165 P. 997, 998]; *Auriemma* v. *Western & Southern Life*

*Ins. Co.,* 323 Ill.App. 271 [55 N.E.2d 292, 293]; *Ebner* v. *Ohio State Life Ins. Co.,* 69 Ind.App. 32 [121 N.E. 315, 321]; *Mickel* v. *Mutual Life Ins. Co.,* 204 Iowa 1266 [213 N.W. 765, 767]; *Western & Southern Life Ins. Co.* v. *Downs,* 301 Ky. 322 [191 S.W.2d 576, 577]; *Metropolitan Life Ins. Co.* v. *Crawford's Adm'x.,* 244 Ky. 730 [51 S.W.2d 926]; *Mutual Life Ins. Co. of Baltimore* v. *Willey,* 133 Md. 665 [106 A. 163]; *Lopardi* v. *John Hancock Mut. Life Ins. Co.,* 289 Mass. 492 [194 N.E. 706, 708]; *Murphy* v. *Metropolitan Life Ins. Co.,* 106 Minn. 112 [118 N.W. 355, 356]; *National Life & Accident Ins. Co.* v. *Green,* 191 Miss. 581 [3 So.2d 812, 136 A.L.R. 1510]; *National Life & Accident Ins. Co* v. *Hugger,* 158 Miss. 686 [131 So. 75, 77]; *Bell* v. *Missouri State Life Ins. Co.,* 166 Mo.App. 390 [149 S.W. 33, 34]; *Perkins* v. *John Hancock Mutual Life Insurance Co.,* 100 N.H. 383 [128 A.2d 207, 208]; *Drilling* v. *New York Life Ins. Co.,* 234 N.Y. 234 [137 N.E. 314, 315]; *National Aid Life Ins. Co.* v. *Honea,* 201 Okla. 41 [202 P.2d 221, 222]; *Pannunzio* v. *Monumental Life Ins. Co.,* 168 Ohio St. 95 [151 N.E.2d 545]; *Metropolitan Life Ins. Co.* v. *Howle,* 62 Ohio St. 204 [56 N.E. 908]; *Prudential Ins. Co. of America* v. *Kudoba,* 323 Pa. 30 [186 A. 793]; *Smith* v. *State Mut. Ben. Soc.,* 161 Pa. Super. 476 [55 A.2d 590, 591]; *Chorney* v. *Metropolitan Life Ins. Co.,* 54 R.I. 261 [172 A. 392]; *Ellis* v. *Capital Life & Health Ins. Co. of Columbia,* 229 S.C. 388 [93 S.E.2d 118]; *Metropolitan Life Ins. Co.* v. *Chappell,* 151 Tenn. 299 [269 S.W. 21, 24]; *Life & Casualty Ins. Co.* v. *King,* 137 Tenn. 685 [195 S.W. 585, 588]; *Life & Casualty Ins. Co.* v. *Runnion,* 20 Tenn.App. 13 [94 S.W.2d 405]; *American Nat. Ins. Co.* v. *Lawson,* 133 Tex. 146 [127 S.W.2d 294]; *Wright* v. *Federal Life Ins. Co.* (Tex.Com.App.) 248 S.W. 325, 326; *Fraser* v. *Metropolitan Life Ins. Co.,* 165 Wash. 667 [5 P.2d 978, 980]; *Logan* v. *New York Life Ins. Co.,* 107 Wash. 253 [181 P. 906, 907]; *Clark* v. *Prudential Ins. Co. of America,* 219 Wis. 422 [263 N.W. 364, 365]; 29 Am.Jur. 610.)

The reason for this rule is that a valid contract of insurance, like any other contract, is enforceable according to its terms. (*National Auto Ins. Co.* v. *Industrial Acc. Com.,* 11 Cal.2d 689, 691 [81 P.2d 928]; *Greenberg* v. *Continental Cas. Co.,* 24 Cal.App.2d 506, 513-514 [75 P.2d 644]); an insurance company may limit its contractual liability by any appropriate provision not proscribed by public policy or the law (*Linnastruth* v. *Mutual Benefit etc. Assn.,* 22 Cal.2d 216, 218 [137 P.2d 833]; *California-Western States etc. Co.* v. *Fein-*

*sten,* 15 Cal.2d 413, 423 [101 P.2d 696, 131 A.L.R. 608]; *National Auto Ins. Co.* v. *Industrial Acc. Com., supra,* 11 Cal.2d 689, 691; *Greenberg* v. *Continental Cas. Co., supra,* 24 Cal.App.2d 506, 511; *Perkins* v. *John Hancock Mutual Life Ins. Co., supra,* 100 N.H. 383 [128 A.2d 207, 208]); a provision in a life policy conditioning liability upon the existence of an insured's sound health at the time of issuance, as heretofore noted, is not contrary to public policy; and there is no statutory prohibition against such. When considering the subject at hand, the court in *Ellis* v. *Capital Life & Health Ins. Co. of Columbia, supra,* 229 S.C. 388 [93 S.E. 118, 121], stated that: ". . . it is the function of the courts to construe the contracts of litigants, not make them."

In the case at bar the court found that Mrs. Herrera was not in sound health at the time the subject policies were issued. This finding was dictated by governing principles of law applied to uncontradicted evidence in the case. ▮ "Sound health" and "good health" are synonymous terms (*Metropolitan Life Ins. Co.* v. *Chappell, supra,* 151 Tenn. 299 [269 S.W. 21, 24]); refer to that condition of health which is free from the effects of any serious ailments which undermine a person's general well being; do not mean perfect health; and do not exclude a condition resulting from minor or temporary indispositions. (*Ransom* v. *Penn Mutual Life Ins. Co.,* 43 Cal.2d 420, 427 [274 P.2d 633]; *Wills* v. *Policy Holders Life Ins. Assn.,* 12 Cal.App.2d 659, 664 [55 P.2d 920]; *Burr* v. *Policy Holders Life Ins. Assn.,* 128 Cal.App. 563, 566 [17 P.2d 1014]; *Van Ross* v. *Metropolitan Life Ins. Co., supra,* 134 Kan. 479 [7 P.2d 41, 45]; *Life & Casualty Ins. Co.* v. *King, supra,* 137 Tenn. 685 [195 S.W. 585, 588].) Applying this definition it has been held that a person afflicted with rheumatic and other heart diseases was not in sound health. (*Cohen* v. *Penn Mut. Life Ins. Co.,* 48 Cal.2d 720, 725 [312 P.2d 241]; *Gulf Life Insurance Co.* v. *Green* (Fla.) *supra,* 80 So.2d 321, 322; *Ebner* v. *Ohio State Life Ins. Co., supra,* 69 Ind.App. 32 [121 N.E. 315, 321]; *Smith* v. *State Mut. Ben. Soc., supra,* 161 Pa. Super. 476 [55 A.2d 590, 591]; *Chorney* v. *Metropolitan Life Ins. Co., supra,* 54 R.I. 261 [172 A. 392]; *Clark* v. *Prudential Ins. Co. of America, supra,* 219 Wis. 422 [263 N.W. 364, 365].) The conclusion of the trial court that Mrs. Herrera was not in sound health because she was suffering from a heart ailment induced by rheumatic fever was proper.

However, employing its concept of the rationale applied in *Brubaker* v. *Beneficial etc. Life Ins. Co., supra,* 130 Cal.App. 2d 340, the trial court determined that the sound-health provisions in the subject policies did not preclude recovery thereon under the circumstances of this case because Mrs. Herrera appeared to be in sound health, and had no knowledge that she was suffering from a heart ailment. The opinion in the case referred to does not justify this determination. In that case the court considered the effect, upon an insurer's liability, of a sound-health provision in a policy issued following a physical examination of the applicant by its medical examiner which failed to disclose an existing cancer that caused the applicant's death shortly thereafter; applied the majority rule that under such circumstances the sound-health provision related only to changes in the condition of the applicant occurring after the making of the application and before issuance of the policy; and referred to this rule as the apparent sound-health rule, to distinguish it from the actual sound-health rule, because it does not permit the insurer to rely upon the provision in question in avoidance of liability if, after a medical examination by it, the applicant appears to be in sound health. The rationale incident to the opinion in question, and to the rule followed, is well expressed in one of the cases cited therein, *viz., Prudential Ins. Co. of America* v. *Kudoba,* 323 Pa. 30 [186 A. 793, 795], where the court noted the holding in some jurisdictions that a sound-health clause in a life insurance policy must be given literal interpretation and is not affected by circumstances preceding its issuance, and stated:

"The weight of authority upholds a contrary doctrine, based upon the theory that presumably the medical examination was satisfactory to the company or the policy would not have been issued, that, by making such examination, the company waived all future contentions as to the health of the insured at or prior to that time, and that the sound-health clause was to be construed as safeguarding the company against only such impairment of the health of the insured as may have arisen in the interval between the time the medical examination was made and the time when the policy was issued.

". . . . . . . . . . .

"If an applicant for such insurance is examined by a medical representative of the company, and is 'passed,' and a policy thereupon issues, he is certainly justified in assuming, in the absence of any fraud or misrepresentation on his part, that

the company has satisfied itself as to his state of health, and that he can rest confident in the belief that he has obtained a valid policy of insurance upon his life.''

In substance, where an insurance company issues its life policy following a medical examination that does not disclose the applicant's actual condition of health, it accepts his apparent condition of health as the condition requisite to insurability; impliedly represents to him that his health is in that condition which warrants his acceptance as an insured; and is estopped to assert the noneffectiveness of such a policy under its sound-health clause when it subsequently ascertains his actual condition of health differed from his apparent condition of health. The foregoing cases, and those which apply the rule stated therein, do not hold that a sound-health clause refers to the applicant's apparent rather than his actual condition of health; instead, they hold that an insurance company issuing a life policy following a medical examination accepts the applicant's apparent condition of sound health as a satisfactory compliance with the requirements imposed by the sound-health provision in its policy. A provision, such as that used in the instant case, which declares that the policy shall not take effect unless at the time of issuance the applicant is in sound health is directed to the applicant's actual and not his apparent condition of health at that time; is clear and unambiguous in this particular; and does not admit of interpretation. (*Van Ross* v. *Metropolitan Life Ins. Co., supra,* 134 Kan. 479 [7 P.2d 41, 45]; *Murphy* v. *Metropolitan Life Ins. Co., supra,* 106 Minn. 112 [118 N.W. 355, 356]; *Perkins* v. *John Hancock Mutual Life Insurance Co., supra,* 100 N.H. 383 [128 A.2d 207, 208]; *National Aid Life Ins. Co.* v. *Honea, supra,* 201 Okla. 41 [202 P.2d 221, 223]; *Ellis* v. *Capital Life & Health Ins. Co. of Columbia, supra,* 229 S.C. 388 [93 S.E.2d 118]; *Wright* v. *Federal Life Ins. Co.* (Tex.Com.App.) *supra,* 248 S.W. 325, 326; *Fraser* v. *Metropolitan Life Ins. Co., supra,* 165 Wash. 667 [5 P.2d 978, 980].) Whether, under the rules heretofore stated, such a provision becomes operative because the applicant is not in sound health at the time a policy is issued to him, the fact that he then appeared to be in good health and had no knowledge of his true condition is immaterial to the issue raised. (*Gulf Life Insurance Co.* v. *Green* (Fla.) *supra,* 80 So.2d 321, 322; *Metropolitan Life Ins. Co...* v. *Howle, supra,* 62 Ohio St. 204 [56 N.E. 908, 909]; *National Aid Life Ins. Co.* v. *Honea, supra,* 201 Okla. 41 [202 P.2d 221, 223]; *Ellis* v. *Capital Life &*

*Health Ins. Co. of Columbia, supra,* 229 S.C. 388 [93 S.E.2d 118] ; *Life & Casualty Ins. Co.* v. *Runnion, supra,* 20 Tenn. App. 13 [94 S.W.2d 405] ; *American Nat. Ins. Co.* v. *Lawson, supra,* 133 Tex. 146 [127 S.W.2d 294] ; *Fraser* v. *Metropolitan Life Ins. Co., supra,* 165 Wash. 667 [5 P.2d 978].) Such a situation differs materially from one involving a representation by the applicant concerning the status of his health; the former concerns only the intention of the parties as expressed in the contract of insurance; the latter concerns the good faith of the person making the representation and the extent of reliance thereon by the insurer; as a consequence, although proof of lack of knowledge is a defense to the charge of misrepresentation respecting a fact material to the contract, it is not a factor which may modify the terms of the contract. ▮ There is a basic difference between the insurer's defense against liability based upon an alleged misrepresentation respecting the applicant's state of health and its defense which rests upon a sound-health provision in its contract; the former is concerned with the scope of the representation made which, in turn, is dependent upon the knowledge of the person making it, whereas the latter is concerned with the scope of a condition precedent to liability which is determined by the language of the contract; thus, although proof of lack of knowledge may eliminate a factor essential to a charge of misrepresentation (*Cohen* v. *Penn Mut. Life Ins. Co., supra,* 48 Cal.2d 720, 726; *Ransom* v. *Penn Mutual Life Ins. Co., supra,* 43 Cal.2d 420, 426; *Pierre* v. *Metropolitan Life Ins. Co.,* 22 Cal.App.2d 346, 349 [70 P.2d 985] ; *Wills* v. *Policy Holders Life Ins. Assn., supra,* 12 Cal.App.2d 659, 661, 664-665; *Travelers Ins. Co.* v. *Byers,* 123 Cal.App. 473, 478 [11 P.2d 444] ; *Chase* v. *Sunset Mutual Life Assn.,* 101 Cal. App. 625, 631 [281 P. 1054]), as heretofore noted, it is immaterial to an issue respecting the effect of the condition precedent.

On the other hand, if an insurance company has knowledge that an applicant for life insurance is not in sound health and, nevertheless, issues a policy to him, it waives the requirements of a sound-health provision therein; has accepted him as an insured; and is estopped to assert such lack of sound health in defense of its liability under the policy so issued. (*Van Ross* v. *Metropolitan Life Ins. Co., supra,* 134 Kan. 479 [7 P.2d 41, 43] ; *Western & Southern Life Ins. Co.* v. *Downs, supra,* 301 Ky. 322 [191 S.W.2d 576, 578] ; *Drilling* v. *New York Life Ins. Co., supra,* 234 N.Y. 234 [137 N.E. 314, 315] ;

*Bible* v. *John Hancock Mut. Life Ins. Co. of Boston, Mass.,* 256 N.Y. 458 [176 N.E. 838, 840] ; *Pannunzio* v. *Monumental Life Ins. Co., supra,* 168 Ohio St. 95 [151 N.E.2d 545, 550] ; *Life & Casualty Ins. Co.* v. *King, supra,* 137 Tenn. 685 [195 S.W. 585, 589] ; *Wright* v. *Federal Life Ins. Co., supra* (Tex. Com.App.) 248 S.W. 325, 326.)

In the instant case, the defendants contend that the plaintiff had constructive notice of Mrs. Herrera's heart condition because its agent was informed that she had been in a hospital once for a cold. The evidence strongly supports the conclusion insofar as Mrs. Herrera is concerned that, when she gave this information in response to the agent's request to relate all causes for which she had consulted a doctor within five years, she was attempting to conceal the existence of a heart condition which required her to consult a doctor at least three times within the preceding two years. In any event, the information in question was not of such a nature as to place the insurance company on inquiry respecting the existence of a heart condition and, therefore, did not constitute knowledge of that condition. This conclusion is supported by decisions involving analogous situations, *viz., Cohen* v. *Penn Mut. Life Ins. Co., supra,* 48 Cal.2d 720, 728; *Telford* v. *New York Life Ins. Co.,* 9 Cal.2d 103, 104, 107-108 [69 P.2d 835] ; *San Francisco Lathing Co.* v. *Penn Mut. Life Ins. Co.,* 144 Cal.App.2d 181, 187 [300 P.2d 715] ; *Mutual Life Ins. Co. of Baltimore* v. *Willey, supra,* 133 Md. 665 [106 A. 163] ; *Wright* v. *Federal Life Ins. Co.* (Tex.Com.App.), *supra,* 248 S.W. 325, 326.

Although the instant policy contained a noncontestability clause, it had not been activated, and the effect of such a clause upon a sound-health provision is not an issue determined by this opinion. The defendants' contentions respecting the inapplicability of the sound-health provision in the subject policies, which also appeared in the applications therefor, are confined to the effect of the insured's lack of knowledge of Mrs. Herrera's actual condition of health and to the insurance company's knowledge that on one occasion she went to a hospital on account of a cold; the theory applied by the trial judge, as expressed in his written memorandum of opinion, likewise is confined to these factors; the findings are related to this theory, as a matter of law do not support the decision thereunder, and do not purport to support the decision on any other theory; and our conclusions on appeal have been governed accordingly.

Our conclusion in the premises render unnecessary a consideration of the other grounds for reversal urged by the plaintiff.

The judgment is reversed.

Griffin, P. J., concurred.