Keyser v. Met. Life Ins. Co.          CV-95-157-JD  05/28/96
                UNITED STATES DISTRICT COURT FOR THE
                     DISTRICT OF NEW HAMPSHIRE


Jennifer Keyser

        v.                              Civil No. 95-157-JD

Metropolitan Life Ins. Co.


                          O R D E R


     The plaintiff, Jennifer Keyser, brought this action in state

court seeking a declaration that she is entitled to benefits as

the named beneficiary of a life insurance policy issued by the

defendant, Metropolitan Life Insurance Co., to the plaintiff's

husband, Barry Keyser.  The defendant removed the case to federal

court.  Before the court are the defendant's motion for summary

judgment (document no. 15) and the defendant's motion to strike

portions of the plaintiff's affidavit (document no. 18).


                        Background[1]

     On January 26, 1993, the plaintiff and her husband met with

Charles Clark, the defendant's sales representative, at the

plaintiff's home.  Based on the information he received during

his meeting with the Keysers, Clark prepared an application for a

_____

        [1]The court's recitation of the facts relevant to the instant
motion are either not in dispute or have been alleged by the
plaintiff.

life insurance policy for Barry Keyser.  The defendant approved the plaintiff's application, and, based on the information provided therein, issued a preferred/nonsmoker policy to the plaintiff on February 8, 1993.  The policy issued to Barry Keyser was attached to and expressly incorporated his application, and named the plaintiff as the sole beneficiary.

Question 9 of the application requested information concerning the date the applicant last used cigarettes, cigars, pipes, or smokeless tobacco, and provided a box marked "never" next to each item.  Clark marked each of the four "never" boxes on the application.  Question 12(f) asked:

Has any person proposed for insurance:

. . .

> (f) Ever used heroin, cocaine, barbiturates or other drugs, except as prescribed by a physician or other licensed practitioner; or received treatment or advice from a physician or other practitioner regarding the use of alcohol, or the use of drugs except for medical purposes; or received treatment or advice from an organization which assists those who have an alcohol or drug problem?

Clark marked the box marked "no" in response to this question.

At the top of page six, centered and in bold print, underneath the word "Agreement," the application contains the following language:

2

> I have read the application and agree that all statements and answers are true and complete to the best of my knowledge and belief.

The plaintiff's signature appears several inches below.

The parties do not dispute that the answers on the application to questions 9 and 12(f) were not true. Barry Keyser used tobacco on an "off-and-on basis for an extended period of time" until January 1, 1993, and smoked marijuana before that date. See Affidavit of Jennifer Keyser ¶¶ 3, 5; Keyser Deposition at 14.[2] There is also no dispute that the plaintiff would not have received a nonsmoker/preferred classification, and thus would have been required to pay a higher premium for a policy from the defendant, had he revealed the existence and extent of his smokeless tobacco and marijuana use. See Affidavit of James Gallagher ¶¶ 7-8, 10. However, the parties do dispute the manner in which Clark obtained information from Barry Keyser. Clark has stated that he specifically asked Barry Keyser every question contained in the application. The plaintiff claims that Clark and Barry Keyser merely "carried on an informal conversation during which questions were asked." Objection to Motion for

---

[2]Although the plaintiff also has admitted that Barry Keyser used the drug LSD, it is not clear whether he ever used the drug before January 26, 1993, the date he signed the application. Consistent with Rule 56, the court does not consider Barry Keyser's failure to disclose his use of LSD on the application to be a false statement.

3

Summary Judgment at 2. She claims that Clark never asked her husband whether he had ever used smokeless tobacco or marijuana, and that she would remember if Clark had done so. She has further testified that her husband had difficulty reading.

On April 9, 1994, Barry Keyser died as a result of a gunshot wound. The plaintiff demanded that the defendant make payment under the terms of the policy, but the defendant refused, claiming that Barry Keyser's death was a suicide and thus not covered under the terms of the policy. At some point the defendant also discovered the misrepresentations in the plaintiff's application. The defendant sent the plaintiff a check for $306, representing the premiums that had been paid under the policy. The plaintiff did not accept the check, and instead initiated this action.

## Discussion

The defendant argues that it is entitled to summary judgment because Barry Keyser made, or at least adopted, material misstatements in his application for a life insurance policy. The plaintiff claims that her husband answered all of Clark's questions truthfully, and that she should not be penalized for Clark's failure to ask whether Barry Keyser used smokeless tobacco or marijuana.

4

Summary judgment is appropriate when material facts are undisputed and the moving party is entitled to judgment as a matter of law. Rodriquez-Garcia v. Davila, 904 F.2d 90, 94 (1st Cir. 1990) (citing Fed. R. Civ. P. 56(c)). The burden is on the moving party to establish the lack of a genuine, material factual issue, Finn v. Consolidated Rail Corp., 782 F.2d 13, 15 (1st Cir. 1986), and the court must view the record in the light most favorable to the nonmovant, according the nonmovant all beneficial inferences discernable from the evidence. Caputo v. Boston Edison Co., 924 F.2d 11, 13 (1st Cir. 1991).

New Hampshire law provides that

[e]very policy of insurance issued or delivered within this state by any life insurance corporation doing business within the state, together with the application therefor, a copy of which application shall be endorsed upon or attached to the policy and made a part thereof, shall constitute the entire contract between the parties.

N.H. Rev. Stat. Ann. § ("RSA") 408:9 (1991). "The statute expresses the public policy of the state that insurance applications should see the light of day and that the policyholder should have an opportunity to read them." Perkins v. John Hancock Mutual Life Ins. Co., 100 N.H. 383, 385, 128 A.2d 207, 209 (1956). An insurer who includes a completed copy of an application as part of a life insurance policy it issues may deny coverage under the policy if the application includes a material

5

misstatement.  See id.; Amoskeag Trust Co. v. Prudential Ins. Co., 88 N.H. 154, 160-63, 185 A. 2, __ (1936) (distinguishing between misrepresentations in applications for coverage, which must be material to constitute a defense, and warranties, which justify denying coverage regardless of materiality); cf. RSA 415:9 (1991) (falsity of statement in application for accident and health insurance bars right to recovery if statement was made with actual intent to deceive or materially affects acceptance of risk or hazard assumed by insurer).  A statement is material if it has a bearing on the soundness of the risk.  Amoskeag, 88 N.H. at 162, 185 A. at __; cf. Mutual Benefit Life Ins. Co. v. Gruette, 129 N.H. 317, 320, 529 A.2d 870, 872 (1987) ("[T]he test under RSA 415:9 of the materiality of a false statement made without actual intent to deceive is whether the statement could reasonably be considered material in affecting the insurer's decision to enter into the contract, in estimating the degree or character of the risk, or in fixing the premium rate thereon.") (quoting Taylor v. Metropolitan Life Ins. Co., 106 N.H. 455, 458, 214 A.2d 109, 122 (1965)).

Here, the record indicates that the application was incorporated and attached to the policy issued to Barry Keyser, and that the misstatements in the application were material.  The defendant would not have issued Barry Keyser a preferred/non-

6

smoker policy, and thus would have charged him a greater premium on a life insurance policy, had his application included information about his use of tobacco and smokeless tobacco. As such, the defendant had a sufficient justification under New Hampshire law to deny payment of a death benefit to the plaintiff.[3]

The plaintiff contends that the defendant cannot assert the misstatements in the application as a defense to nonpayment because Clark either intentionally or negligently failed to ask Barry Keyser the appropriate questions in preparing his application and fraudulently induced him to sign the application. The argument fails. The New Hampshire Supreme Court has held that an insurance agent who acts negligently or fraudulently in preparing an insurance application acts beyond the scope of his agency and that, in such a situation, the insurer is not chargeable with the knowledge or constructive knowledge of its agent. See Boucouvalas v. John Hancock Mutual Life Ins. Co., 90 N.H. 175, 180, 5 A.2d __, __ (1939); Levesque v. Mutual Life Ins. Co., 88 N.H. 41, 44; 183 A. 870, __ (1936). Thus, even if

_____

[3]The court also notes that the plaintiff signed the application and thus "was bound by the representation of truthfulness contained in the application which he signed." Boucouvalas v. John Hancock Mutual Life Ins. Co., 90 N.H. 175, 180, 5 A.2d __, __ (1939). But cf. RSA 415:9 (falsity of nonmaterial statement in application for health or accident insurance bars recovery only if statement was made with actual intent to deceive).

7

proven, "fraud or negligence of the soliciting agent avoids liability under the policy and is a defense of the insurer." Perkins, 100 N.H. at 385, 128 A.2d at 209.[4] The defendant is entitled to summary judgment.

## Conclusion

The defendant's motion for summary judgment (document no. 15) is granted. The defendant's motion to strike portions of the plaintiff's affidavit (document no. 18) is moot. The clerk is ordered to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

May 28, 1996

cc:  Thomas W. Kelliher, Esquire
     William D. Pandolph, Esquire
     Ronald A. Nimkoff, Esquire

_____

[4]Although the New Hampshire Supreme Court appears to have acknowledged the harshness of this rule, see Gruette, 129 N.H. at 321-22, 529 A.2d at 872-73, it has never overruled it, and the the court declines to depart from settled precedent.

8